UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECRETARY OF LABOR,<br>United States Department of Labor<br><br>                Plaintiff,<br>   v.<br><br>MARDI GRAS ENTERTAINMENT,<br>INCORPORATED, d/b/a MARDI GRAS and<br>JAMES SANTANIELLO, INDIVIDUALLY,<br><br>              Defendants. | No. 3:11-cv-30024-FDS |

**DEFENDANTS' MOTION TO DISMISS OR STAY PROCEEDINGS
PENDING DISPOSITION OF PARALLEL STATE COURT ACTION**

This case, a civil enforcement action filed by the United States Secretary of Labor pursuant to 29 U.S.C. § 216(c), seeks to recover certain sums that the Secretary contends to be owed to bartenders allegedly employed by Mardi Gras Entertainment, Inc. and James Santaniello (together, "Defendants"). More than a year before the Secretary filed her Complaint, a group of Mardi Gras bartenders, exotic dancers, and disc jockeys filed their own suit in Massachusetts state court asserting precisely the same allegations – along with a variety of other state law claims – against a broader group of entities that includes both Defendants. Because simultaneous litigation of these parallel actions would be massively inefficient and contrary to the interests of "wise judicial administration," Defendants move to dismiss or stay[1] this case

---

[1] Although the Supreme Court's *Colorado River* decision concerned the dismissal of a federal court action, *see* 424 U.S. at 809, subsequent cases have held that a stay of proceedings may also be appropriate. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). Either remedy would be appropriate in this case, and Defendants take no position that one is preferable to the other.

pursuant to the abstention doctrine recognized by the U.S. Supreme Court in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## BACKGROUND

The Mardi Gras is a premier adult entertainment venue located in Springfield, Massachusetts. In or about 2007 or 2008, the U.S. Department of Labor ("DOL" or the "Department") initiated an investigation into alleged violations of wage and hour laws with respect to bartenders working at that facility. *See* Affidavit of Barry J. Miller, Esq. ("Miller Aff."), appended hereto as Attachment A, ¶ 6. That investigation focused on The Mardi Gras' alleged practice of requiring bartenders to pay a fee for each shift they worked. *Id*. Over a period of approximately three years, the Department intermittently conducted investigatory work, including mailing written materials to Mardi Gras employees and conducting interviews of bartenders working at The Mardi Gras, but the DOL took no definitive steps toward completing its investigation, much less filing an enforcement action pursuant to 29 U.S.C. § 216(c) during that period of time. *Id.*.

On January 11, 2010, while the DOL's investigation remained pending, a group of bartenders, exotic dancers and disc jockeys filed suit against Defendants and several other individuals and entities on behalf of themselves and a putative class in Massachusetts Superior Court, Hampden County captioned *Massa v. Mardi Gras Entertainment, Inc.*, docket no. 10-00034-A (the "State Case").[2] *See* Miller Aff., ¶ 3. In that lawsuit, the plaintiffs assert a litany of

---

[2] The State Case was originally captioned *Ruiz v. Mardi Gras Entertainment, Inc*. Of the seven original named plaintiffs – Madeline Ruiz, Paula Massa, Andrea Walshaw, Robert Bruso, Robert Glavin, Maureen Rushby, and Jessica Taylor – three remain in the case. Three plaintiffs had dropped out of the case by the time the DOL filed its Complaint in this action. The current operative complaint in the State Case includes nine named plaintiffs, of which three (Maureen Rushby, Jessica Taylor and Patricia Carbone) are bartenders. *See* Third Amended Complaint, ("State Complaint"), appended to Miller Aff. as Exhibit 2. In addition to asserting claims against the Defendants here, that complaint also asserts claims against The Worthington Shops, Inc., BSC Realty, Inc., Anthony Santaniello, Helen Santaniello, and other unnamed

2

state law claims, including violations of the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151 §§ 1, 7; the Massachusetts Independent Contractor Statute, Mass. Gen. Laws ch. 149 § 148B; and the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149 § 152A. *See* Miller Aff., Ex. 2 at p. 10. The specific practices challenged include The Mardi Gras' alleged practice of requiring bartenders to pay fees for each shift that they worked. *Id.* at ¶¶ 41-42. The plaintiffs in the State Case seek, among various other relief, to recoup amounts that they contend bartenders working at The Mardi Gras paid beginning on January 11, 2007, plus treble damages and attorneys' fees provided under state law. *Id*. at p. 11. To date, the parties have engaged in substantial discovery in the State Case, including depositions, document requests, interrogatories, and requests for admissions, as well as extensive motion practice. Discovery is scheduled to conclude in mid-June 2012, and dispositive motions are due to be filed on or before July 31, 2012. *See* Miller Aff. ¶ 5.

The DOL finally concluded its investigation regarding The Mardi Gras and presented Defendants with an assessment on May 21, 2010. Miller Aff., ¶ 7. The assessment represented the Department's findings regarding the individuals who had paid fees to work at The Mardi Gras as bartenders and the amounts that the DOL contended such individuals to be due. *Id*. In discussions between counsel for Defendants and DOL personnel, the parties discussed the pendency of the State Case, the fact that the State Case had been commenced before the DOL concluded its investigation, and the fact that the subject of the DOL's investigation and threatened enforcement action was subsumed within the State Case. Miller Aff., ¶ 8.

On January 28, 2011, the DOL filed its Complaint in this case alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Docket No. 1 ("DOL

---

corporate presidents and officers, and it purports to assert claims related to practices at The Mardi Gras and four other clubs allegedly owned by the defendants.

Complaint"). Although the Complaint is vague, in other pleadings the Department has characterized this case as asserting that Defendants "improperly charged certain of [their] employees (the "Bartenders") a fee for each shift worked in violation of the Fair Labor Standards Act." *See* Docket No. 19, at 1. In this action, the DOL seeks to recoup fees that it claims the bartenders paid for shifts worked beginning on September 1, 2007, and the DOL has asserted a claim for double damages pursuant to the FLSA.[3] DOL Complaint at ¶ IX. Defendants answered the Complaint on June 24, 2011. Docket No. 9. The named plaintiffs in the State Case filed a motion to intervene on September 30, 2011, which Defendants and the DOL both opposed. *See* Docket Nos. 18, 20, 21. No discovery or substantive motion practice has taken place in this action.[4]

## ARGUMENT

**I.    THE *COLORADO RIVER* DOCTRINE IS APPLICABLE TO THIS CASE**

In *Colorado River*, the Supreme Court held that, where parallel state and federal cases cover the same subject matter, the federal court may abstain from the exercise of jurisdiction for reasons of "wise judicial administration." 424 U.S. at 817. In that case, the United States brought suit in federal court on its own behalf and on behalf of two Native American tribes seeking a declaratory judgment concerning the parties' rights to waters in a particular district of Colorado. *Id.* at 805. The same matter – along with a series of similar disputes concerning water rights in other Colorado districts – were simultaneously being litigated through a

---

[3] Defendants deny that the Department's September 1, 2007 date accurately reflects the statute of limitations period for this matter. Pursuant to 29 U.S.C. § 255, the applicable limitations period extends back two years from the date of the DOL Complaint, or to January 28, 2009.

[4] The Secretary and Defendants have had discussions, beginning before this action was filed, regarding a possible settlement of the claims that the Secretary has asserted on behalf of the Bartenders. After working through a number of proposals, the parties have concluded that there is no mutually acceptable way to resolve this action while the State Case remains pending. *See* Docket No. 25, ¶¶ 2-3.

4

specialized state law procedure. *Id*. at 806. Although traditional abstention doctrines did not apply, the Court held that "a number of factors clearly counsel[ed] against concurrent federal proceedings," and accordingly dismissal of the duplicative federal court action was appropriate. *Id*. at 819.

As in *Colorado River*, this case is parallel to the State Case and "wise judicial administration" counsels against permitting it to proceed. In addressing whether cases are parallel for purposes of *Colorado River* doctrine, courts look to whether "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *LaDuke v. Burlington N. R.R. Co*., 879 F.2d 1556, 1559 (7th Cir. 1989). "[P]erfect identity of issues is not a prerequisite for dismissal." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991). Likewise, the parties need not be identical, but need only be "substantially" the same, or "in privity." *Rossi v. Gemma*, 489 F.3d 26, 39 n.22 (1st Cir. 2007). The subject matter at issue in this case – payments allegedly made by bartenders for shifts that they worked at The Mardi Gras during the period from September 2007 to the present – is also directly at issue in the State Case. The Defendants here are both defendants in the State Case. The plaintiffs are, in effect, also the same. The DOL brings its action "on behalf of" the employees whose wages it seeks to recover (here, bartenders who worked at The Mardi Gras, who are named plaintiffs and putative class members in the State Case), and the Department can only pursue the same lost wages and double damages that those employees would be eligible to recover on their own under the FLSA. *See* 29 U.S.C. § 216(c).

In addition, application of *Colorado River* is appropriate in this litigation because the State Case would provide "complete relief" to the bartenders at issue. *See Currie v. Group Ins. Comm'n*, 290 F. 3d 1 (1st Cir. 2002). If the plaintiffs prevail in the State Case, they stand to

5

recover any fees that they may have paid to work at The Mardi Gras for the period from January 2007 to the present, plus treble damages and attorneys' fees. Such a recovery would entirely subsume the recovery sought by the DOL here, which only concerns the time period from September 2007 to the present and includes only double damages as the maximum potential relief. On the other hand, because the State Case covers the same factual allegations and the same defendants as this case, a judgment in favor of the defendants in the State Case would have a collateral estoppel effect in this action. *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 169 (1984) ("[T]he doctrine of mutual defensive collateral estoppel is applicable against the government to preclude relitigation of the same issue already litigated against the same party in another case involving virtually identical facts."). Put simply, the State Case will completely predetermine the outcome of this case, and all of the prerequisites for application of the *Colorado River* doctrine are satisfied.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO STAY OR DISMISS OR STAY THIS CASE PURSUANT TO *COLORADO RIVER*

In deciding whether to abstain from exercising jurisdiction pursuant to *Colorado River* in favor of a parallel state action, the Court must make a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Colorado River*, 424 U.S. at 818; *see also Moses H. Cone*, 460 U.S. at 16. In making this judgment, courts in this Circuit address a series of non-exclusive factors: "(1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction." *Rio Grande Cmty.*

*Health Ctr. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005) (quoting *KPS & Assoc., Inc. v. Designs By FMC, Inc*., 318 F.3d 1, 10 (1st Cir. 2003)). Here, the balance of these factors weighs decisively in favor of abstention. Specifically, the third, fourth, and seventh factors dictate that dismissal or stay of the proceedings in this case is appropriate.

### A.   The Order in Which the Forums Obtained Jurisdiction Favors Abstention

Although courts typically frame the "priority" factor of the *Colorado River* analysis in terms relating to the order in which the two cases were filed, the Supreme Court has made clear that this element should be evaluated in a "pragmatic and flexible manner" and "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21; *see also Currie*, 290 F.3d at 10; *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 30 ("The label for this factor is something of a misnomer, as 'the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction.'") (quoting *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991)).

Here, the State Case was filed more than a year before the DOL Complaint <u>and</u> it has progressed much further in the litigation process. The State Case is nearing the end of discovery, substantial motion practice has taken place, and dispositive motions will be due in a matter of a few months. In contrast, there has been <u>no</u> discovery in the DOL action, and aside from a motion to intervene by the plaintiffs in the State Case, there has been no motion practice of any kind in this action. In effect, this action is more than two years behind the State Case in its development. The inefficiencies that would result from continuing to litigate this case when extensive proceedings concerning precisely the same matters have already occurred in state court are obvious. Moreover, because the State Case is at such an advanced stage of litigation in comparison to this case and will have a *res judicata* effect on the matters that would be litigated

7

here, it is a virtual certainty that the outcome of this case will be determined entirely by the outcome of the State Case. Any proceedings in this Court will therefore be a meaningless squandering of time and resources. For these reasons, the "order in which the forums obtained jurisdiction" strongly favors abstention.[5]

### B. Concurrent Litigation Presents a Strong Risk of Prejudice to the Defendant from "Piecemeal Litigation"

In addition to the "repetitive adjudication that takes place in all cases implicating *Colorado River* doctrine," this case presents "special complications" due to the fact that the DOL is statutorily confined to pursuit of recovery available under the FLSA. *See* 29 U.S.C. 216(c); *see also Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010); *Rojas-Hernandez v. P.R. Elec.*, 925 F.2d 492 (1st Cir. 1991). As a result, the State Case is far more comprehensive than the present action, covering additional parties (both additional defendants <u>and</u> additional categories of employees) and claims that cannot be asserted by the DOL. For example, the State Case asserts claims on behalf of bartenders under the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149 § 152A, which dictates the types of employees that may receive tips in a tip pooling arrangement. In addition, the State Case plaintiffs assert claims under the state minimum wage law – which sets the minimum hourly rate at $8, rather than the $7.25 rate set by federal law and sought by the Department here – as well as statutory treble damages and attorneys' fees pursuant to Mass. Gen. Laws ch. 149 § 150. In essence, the putative class of

---

[5] The fact that the litigation in the State Case has progressed so substantially compared to this case distinguishes this matter the likes of *Pinero v. Gemme*, 2011 WL 4853019, at *9 (D. Mass. 2011), an earlier case before this Court where the "priority" element was only a minor factor. There, the state court case was filed only a week before the federal case, and there was no indication that litigation in that matter progressed any further than it had in the parallel federal case. In the present action, the "priority" factor weighs much more heavily in favor of abstention.

8

bartenders in the State Case claim entitlement to a substantially larger pot of money, and this case can hope only to resolve their claims to a portion of that pot.

Moreover, Massachusetts law creates the prospect of liability for unpaid wages for certain corporate officers, regardless of their degree of fault for the underlying violations. Mass. Gen. Laws ch. 149 § 148 ("The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section."). In contrast, under the FLSA, individual defendants may be held liable only where there is "a direct relationship between the corporate officers' decision and the FLSA violation at issue." *Solis v. Velocity Express, Inc.*, 2010 WL 2990293, at \*6 (D. Ore.) (citing *Baystate Alternative Staffing v. Herman*, 163 F.3d 668, 678) (1st Cir. 1998)). As a result, the Department may only pursue claims against a subset of the parties who may potentially be held liable for the wage violations at issue in the State Case. Especially where such a large number of defendants are named in the State Case, there is a substantial likelihood that the two cases will result in conflicting outcomes with respect to which entities or individuals are responsible for paying for any allegedly unpaid wages. This is precisely the type of situation prior First Circuit cases applying *Colorado River* have sought to avoid. *See Jimenez v. Rodriguez-Pagan*, 597 F.3d 18 (1st Cir. 2010) (danger of piecemeal litigation weighed in favor of abstention where party likely to be necessary to allocation of property at issue was not a party in the federal case because his presence would destroy diversity jurisdiction); *cf. Liberty Mutual v. Foremost-McKesson*, 751 F. 2d 475 (1st Cir. 1985) (abstaining pursuant to *Colorado River* because possibility of conflicting interpretations of insurance policy language could leave policy holder with inadequate coverage).

Finally, the very section of the FLSA under which the Department brings this lawsuit evinces a federal policy against piecemeal litigation of wage claims.  Under that provision, once the DOL files a claim on behalf of an employee, he or she is prohibited from thereafter filing a lawsuit of his or her own under the FLSA.  *See* 29 U.S.C. § 216(c).  This provision was expressly intended "to relieve the courts and employers of the burden of litigating a multiplicity of suits based on the same violation of the Act by the employer."  *Donovan v. Univ. of Texas at El Paso*, 643 F.2d 1201, 1207 (5th Cir. 1981) (quoting  S. Rep. No. 145, 87th Cong., 1st Sess. (1961) reprinted in (1961) U.S. Code Cong. & Ad. News 1659).  Such a federal policy against piecemeal litigation is the "canonical example" of a basis for abstaining pursuant to *Colorado River*.  *See Jimenez*, 597 F.3d at 29; *Colorado River*, 424 U.S. at 819 (abstention appropriate because federal law at issue evinced clear policy against piecemeal adjudication of river system water rights).

### C.     Filing of This Case Appears to Have Been Motivated at Least in Part by Events in the State Case

Although the factor concerning "the vexatious or contrived nature of the federal claim" might appear on its face to require bad faith (which Defendants do not contend to be present here), the First Circuit's analysis of this factor has focused solely on whether the federal case was filed in reaction to events in the parallel state case.  *See Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309-10 (1st Cir. 1986) ("[I]t would be unthinkable that every time a [state court litigant] became dissatisfied with that court's provisional resolution of some issue and there was diversity of citizenship, it could rush over to the federal courthouse in the hope of obtaining a more favorable determination"); *Villa Marina v. Hatteras Yachts*, 947 F.2d 529 (1st Cir. 1991) (district court's determination that litigant's "decision to switch to federal court stemmed from [its] unsuccessful effort to obtain a preliminary injunction" properly counted in favor of

abstention). Here, the DOL investigated the relatively straightforward matters at issue in this case for three years and took no action. Even after the plaintiffs in the State Case commenced their own action concerning the same subject matter as the DOL's investigation, the Department took no action and was content to allow the State Case to proceed for more than a year before the DOL undertook any enforcement action. Indeed, the Department only concluded its investigation and filed its complaint in this matter after the State Case showed signs of beginning to falter. A few weeks before the Secretary commenced this action, the plaintiffs filed their third complaint in the State Case, which was a result of several waves of putative class representatives abandoning their claims in that case. *See* Miller Aff., Ex. 1, docket entry 27. Taken as a whole, this chronology of events is suggestive of an effort to avoid an adverse outcome on the bartenders' claims by shifting the litigation of the claims at issue from the Superior Court to this Court.

### D. The Remaining Factors are Neutral

The other factors considered in the First Circuit's *Colorado River* analysis – whether either court has assumed jurisdiction over a res; the geographical inconvenience of the federal forum; whether state or federal law controls; the adequacy of the state forum to protect the parties' interests; and the principles underlying removal jurisdiction – are neutral here. These factors neither favor abstention nor counsel against it. Neither case involves a res; the two courts are located within a half-mile of each other on the same street, and are thus equally convenient; and there is no removal jurisdiction at issue. While federal law is at issue in this case, the state minimum wage law at issue in the State Case, which is substantively analogous to the FLSA, provides a higher rate and treble damages, such that a judgment in favor of the plaintiffs in that that case would subsume any recovery available here. Thus, as a practical matter, the outcome of the State Case will decide the result in this case. Finally, there has been no suggestion that the

state forum is inadequate. Absent exceptional circumstances, federal courts assume the competency of state courts. *See United States v. Fairway Capital Corp.*, 483 F.3d 34, 43 (1st Cir. 2007). There is no reason that this Court or this action are better suited to adjudicate the matters at issue than the Massachusetts Superior Court or the State Case – particularly where the employees involved may potentially seek greater recovery in the form of a higher minimum wage rate and treble damages in Superior Court.

## CONCLUSION

There is nothing to be gained and a substantial volume of resources that stand to be squandered by the active litigation of this case at this juncture. Everything that the Secretary seeks to recover in this action has been pursued by the plaintiffs in the State Case, and that hotly contested action will have been proceeding toward disposition for more than two years before this case could even get started in a meaningful way. In light of this balance of considerations, the Court should dismiss this action or stay proceedings in this matter pending the disposition of the State Case pursuant to the abstention doctrine that the Supreme Court recognized in *Colorado River*.

Respectfully submitted,
MARDI GRAS ENTERTAINMENT, INC. and
JAMES SANTANIELLO
By their Attorneys,

*/s/ Barry J. Miller*
Ariel D. Cudkowicz (No. 550577)
Barry J. Miller (No. 661596)
Anthony S. Califano (No. 661136)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210
bmiller@seyfarth.com
Tel:  (617) 946-4800
Fax:  (617) 946-4801

DATED: February 29, 2012

## **RULE 7.1(A)(2) CERTIFICATION**

Pursuant to Local Rule 7.1(A)(2), I, Barry J. Miller, counsel for the Defendants, hereby certify that I conferred with counsel for Plaintiff. Despite conferring in good faith and attempting to resolve or narrow the issue, the parties have not been able to reach agreement regarding the issues presented by this motion.

                                          */s/ Barry J. Miller*
                                          Barry J. Miller

## **CERTIFICATE OF SERVICE**

I hereby certify that on the February 29, 2012, a copy of the foregoing document was filed electronically through the Court's ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

                                          */s/ Barry J. Miller*
                                          Barry J. Miller