2



COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.                                                                                       Superior Court
                                                                                        Civil Action No. 10-00034-A

| | |
|---|---|
| PAULA RAPOSA, ROBERT BRUSO, <br> MAUREEN RUSHBY, JESSICA TAYLOR, <br> PATRICIA CARBONE, <br> LESLIE CAMPBELL, AIMEE MATHEWS, <br> AMANDA SHUMWAY, and <br> JESSICA ELLEN WRIGHT, <br> on behalf of themselves and all others <br> similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARDI GRAS ENTERTAINMENT, INC., <br> THE WORTHINGTON SHOPS, INC., <br> BSC REALTY, INC., JAMES SANTANIELLO, <br> ANTHONY SANTANIELLO, <br> HELEN SANTANIELLO, and THEIR OTHER <br> CORPORATE PRESIDENTS AND OFFICERS, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## THIRD AMENDED COMPLAINT

I.   INTRODUCTION

1.   This action is brought on behalf of a class of exotic dancers, a class of bartenders, and several disc jockeys challenging Defendants' failure to pay them the full minimum wage and other wages, Defendants' unlawful misclassification of their employees as independent contractors, and Defendants' violation of Massachusetts law governing employees' gratuities.

2.   Plaintiff exotic dancers and plaintiff disc jockeys seek restitution for themselves and all other similarly situated individuals whom Defendants Mardi Gras Entertainment, Inc., James Santaniello, Anthony Santaniello, Helen Santaniello, and their other corporate presidents

1

and officers have misclassified as independent contractors, thereby depriving them of the wages and other benefits of employment to which they are entitled as employees. Their misclassification as independent contractors has resulted in numerous violations of statutory and common law, including violation of the Massachusetts independent contractor law, Mass. Gen. L. c. 149, § 148B, violation of Massachusetts law relating to employees' gratuities, and violation of the obligation to pay dancers and disc jockeys minimum wage pursuant to Mass. Gen. L. c. 151, §§ 1A and 1B. They have also been deprived of other amounts that were improperly deducted from their pay, as well as eligibility for unemployment and workers' compensation. Plaintiffs also seek statutory trebling of all wage-related damages, as well as interest and attorneys' fees and costs, as provided for by law.

3. Plaintiff bartenders seek restitution for themselves and all other similarly situated individuals because the Defendants have improperly failed to pay them the full minimum wage, and have violated the Massachusetts Tips Law and Wage Law by charging them $25 per shift.

## II. PARTIES

4. Plaintiff Madeline Ruiz is an adult resident of Bristol, Connecticut. Plaintiff Ruiz worked as an exotic dancer for Defendants from approximately April 2007 to approximately August 2008.

5. Plaintiff Paula Raposa is an adult resident of Springfield, Massachusetts. Plaintiff Raposa worked as an exotic dancer and a bartender for Defendants from approximately January 1999 to approximately May 2008.

6. Plaintiff Leslie Campbell is an adult resident of Springfield, Massachusetts. Plaintiff Campbell worked as an exotic dancer for Defendants from approximately 2003 until approximately August 2011.

7. Plaintiff Aimee Mathews is an adult resident of Worcester, Massachusetts. Plaintiff Mathews worked as an exotic dancer for Defendants from approximately 2007 until approximately February 2011.

8. Plaintiff Amanda Shumway is an adult resident of Myrtle Beach, South Carolina. Plaintiff Shumway worked as an exotic dancer and bartender for Defendants from approximately July 2004 until approximately February 2009.

9. Plaintiff Jessica Ellen Wright is an adult resident of Chicopee, Massachusetts. Plaintiff Wright worked as an exotic dancer for Defendants from approximately November 2004 until approximately October 2010.

10. The above-named plaintiff dancers bring this action on their own behalf and on behalf of all others similarly situated, namely all other dancers who have been misclassified by Defendants as independent contractors and have not received the wages and other benefits of employment to which they are entitled as employees.

11. Plaintiff Maureen Rushby is an adult resident of West Springfield, Massachusetts. Plaintiff Rushby worked as a bartender for Defendants from approximately August 1995 to approximately May 2009.

12. Plaintiff Jessica Taylor is an adult resident of South Hadley, Massachusetts. Plaintiff Taylor worked as a bartender for Defendants from approximately April 2001 to approximately August 2008.

13. Plaintiff Patricia Carbone is an adult resident of Springfield, Massachusetts. Plaintiff Carbone worked as a bartender for Defendants from approximately June 2007 to approximately February 2010.

14. The above-named plaintiff bartenders bring this action on their own behalf and on behalf of all others similarly situated, namely all the other bartenders who had to pay in order to work as bartenders.

15. Plaintiff Robert Bruso is an adult resident of Springfield, Massachusetts. Plaintiff Bruso worked as a disc jockey for Defendants from approximately December 1995 to approximately July 2008.

16. Defendant Mardi Gras Entertainment, Inc. ("Mardi Gras"), is a domestic corporation incorporated under the laws of the Commonwealth of Massachusetts that has, during the applicable statutory periods, operated five different strip clubs: Anthony's Dance Club at 500 New Ludlow Road in South Hadley; the Mardi Gras Club at 91 Taylor Street, the Lace Strip Club at 451 Worthington Street, the Fifth Alarm at 775 Worthington Street, and Center Stage at 265-267 Dwight Street in Springfield, Massachusetts.

17. Defendant The Worthington Shops, Inc., is a domestic corporation incorporated under the laws of the Commonwealth of Massachusetts that has, during the applicable statutory periods, operated five different strip clubs: Anthony's Dance Club at 500 New Ludlow Road in South Hadley; the Mardi Gras Club at 91 Taylor Street, the Lace Strip Club at 451 Worthington Street, the Fifth Alarm at 775 Worthington Street, and Center Stage at 265-267 Dwight Street in Springfield, Massachusetts.

18. Defendant BSC Realty, Inc., is a domestic corporation incorporated under the laws of the Commonwealth of Massachusetts that has, during the applicable statutory period, owned or operated a number of different strip clubs, including the Mardi Gras Club at 91 Taylor Street, Fifth Alarm at 775 Worthington Street, and Center Stage at 265-267 Dwight Street in Springfield, Massachusetts.

19. James Santaniello, Anthony Santaniello, Helen Santaniello and the other corporate presidents and officers of Defendant Corporations are owners and officers of Defendants Mardi Gras Entertainment, Inc., The Worthington Shops, Inc., and BSC Realty, Inc., and are involved in the daily operations of the five clubs set forth in Paragraphs 16, 17, and 18.

### III. STATEMENT OF FACTS

20. Defendants own and operate five different strip clubs in the Springfield area: Anthony's in South Hadley; the Mardi Gras Club, the Lace Strip Club, the Fifth Alarm, and the Center Stage in Springfield, Massachusetts.

21. Defendants employ exotic dancers, disc jockeys, and bartenders at these clubs.

22. Defendants classify their exotic dancers as independent contractors, but they do not meet the definition of independent contractors as set forth in Mass. Gen. L. c. 149, § 148B.

23. The dancers are not truly entrepreneurs who have the opportunity to grow a business but are, instead, employees who have almost no discretion in what work they perform and how they perform it.

24. The behavioral and financial control manifested over the dancers by Defendants demonstrates that they are employees rather than independent contractors. Defendants instruct them in how to do their work and exercise control over most of the details of their jobs, including rigid scheduling of which days, which hours, and which rotations the dancers can work. Defendants also control the dancers' wardrobe, and their dance music.

25. The dancers perform services which fall directly within Defendants' usual course of business, which is to operate strip clubs in which women perform exotic dances.

26. The dancers do not work in an independently established trade, occupation, profession, or business. Instead, the dancers perform services exclusively for Defendants' clients.

27. The dancers do not represent themselves to the public as being in an independent business to provide dancing services, and they have not invested in an independent business. The dancers are economically dependent on Defendants, on whom they rely to assign them work.

28. In addition, because of their misclassification as independent contractors, the dancers do not receive the benefits that inure from the employment relationship under law.

29. For example, Defendants do not pay the dancers the minimum wage, or indeed, any base hourly wage at all.

30. Further, Defendants do not permit the dancers to retain all their tips, but require all dancers to pay a fee of between $45.00 and $100.00 to management in advance of their shift for the "right" to perform exotic dances. Defendants also require the dancers to pay some of their tips to the disc jockeys.

31. In addition, at certain times in the last three years, Defendants have required the dancers to sell tickets to a comedy show and company t-shirts and charged the dancers the price of any unsold tickets or t-shirts. These fees and "tip-outs" constitute improper deductions from wages.

32. Defendants also classify their disc jockeys as independent contractors, but they do not meet the definition of independent contractors as set forth in Mass. Gen. L. c. 149 § 148B.

33. The disc jockeys are not truly entrepreneurs who have the opportunity to grow a business but are, instead, employees who have almost no discretion in what work they perform and how they perform it.

34. The behavioral and financial controls manifested over the disc jockeys by Defendants demonstrate that they are employees rather than independent contractors.

35. Defendants instruct them in how to do their work and exercise control over most of the details of their jobs, including rigid scheduling of which days, and which hours the disc jockeys can work. Defendants also own the musical equipment that the disc jockeys use to perform their duties.

36. In addition, because of their misclassification as independent contractors, the disc jockeys did not receive the benefits that inure from the employment relationship under law.

37. For example, up to July 2008, Defendants did not pay the disc jockeys minimum wage or any wage at all. Instead, the disc jockeys were paid from tip-outs given to them by the exotic dancers.

38. Then, in July 2008, Defendant James Santaniello told Plaintiff Robert Bruso that he was no longer going to receive tip-outs paid directly by the exotic dancers. Instead, Defendant Santaniello explained that henceforth the dancers would pay disc jockey tip-out money to Mardi Gras management and the management would then determine how much of that money it would pass on to Mr. Bruso and the other disc jockeys.

39. After Mr. Santaniello explained this change in payment policy to Mr. Bruso, Mr. Bruso stated that Defendants were violating the wage and hour law by withholding his compensation. Mr. Santaniello then fired Mr. Bruso.

40. The only employees whom Defendants pay any wages are their bartenders. Defendants pay these bartenders the minimum tipped employee wage of $2.63 per hour.

41. However, at the same time the Defendants require its bartenders to pay a fee of $25.00 for every shift the bartender works. Accordingly, the bartenders effectively receive no wages whatsoever for their work.

42. In addition, Defendants are engaging in a violation of the Massachusetts Tip Law and Wage Law because they are improperly charging the bartenders $25 per shift fee.

43. Further, Defendants required their bartenders, dancers, and disc jockeys to attend informational or training meetings approximately once every six weeks. However, even though these meetings were mandatory and occurred during non-work time, Defendants did not pay the workers for attending these meetings. In addition, Defendants also required their bartenders to attend mandatory unpaid cleaning days.

44. After Plaintiffs served the original complaint on January 12, 2010 club management began to increase its intimidation and discrimination against its dancers, bartenders and disc jockeys.

45. Specifically, over the period of the next several weeks, Defendants told their dancers, bartenders, and disc jockeys that they must sign an "agreement and general release" in order to continue working at Defendants' clubs.

46. This mandatory release included a General Release requiring that the workers release all claims including claims relating to payment of wages or hours worked, claims relating to the receipt of tips or gratuities, and all claims under any Massachusetts wage and hour statutes.

47. The release, which was part of an "Employment Agreement," purported to release all claims against Anthony Santaniello, B.S.C. Realty, Inc., Helen Santaniello, James Santaniello, Mardi Gras Entertainment, Inc., and Sherri-Lynn Via.

48. Defendants have told the workers that they must sign this release of their wage and hour claims or else they would be fired.

49. One worker who was presented with the release was Plaintiff Patricia Carbone. Ms. Carbone was presented with the release in February of 2010 by an assistant manager while she was working as a bartender at Lace Strip Club. At that time Ms. Carbone was told by the assistant manager that she needed to complete the release in order to continue working at Lace Strip Club.

50. On or about February 8, 2010, when Ms. Carbone had not yet signed and returned the release, Ms. Carbone was contacted by the manager for Lace Strip Club, Walter Lavender, by telephone.

51. At that time, Mr. Lavender asked Ms. Carbone why she had not yet signed the release, and stating that "everyone" was signing the release. Ms. Carbone informed Mr. Lavender that she should first be able to show the agreement to an attorney, but that she did not think an attorney would advise her to sign it.

52. In response, Mr. Lavender became frustrated and informed Ms. Carbone that he would have to talk to "them" and would call her back.

53. Approximately one half-hour later, Mr. Lavender called Ms. Carbone and informed her that she could no longer work at Lace Strip Club if she did not sign the release. Having been informed of her termination over the phone, Ms. Carbone did not return to work.

## IV.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

54. Pursuant to the state law requirements as set forth in Massachusetts General Law Chapter 149 § 150, Plaintiffs have filed their statutory claims with the Office of the Attorney General, and the Office of the Attorney General has issued right to sue letters.

## COUNT I
### MASSACHUSETTS INDEPENDENT CONTRACTOR LAW

By misclassifying the Plaintiff exotic dancers and disc jockeys as independent contractors instead of employees, Defendants have violated Mass. Gen. L. c. 149 § 148B. This claim is asserted pursuant to Mass. Gen. L. c. 149 § 150.

## COUNT II
### FAILURE TO PAY MINIMUM WAGE
### IN VIOLATION OF STATE LAW

Defendants' conduct in failing to pay the Plaintiffs the full minimum wage, as set forth above, violates Mass. Gen. L. ch. 151 §§ 1, and 7. Defendants have also improperly taken the "tip credit" against the minimum wage for their bartenders.

## COUNT III
### TIPS LAW

Defendants' conduct in requiring bartenders to pay $25 per shift out of their tips, and in requiring exotic dancers to pay shift fees and to tip out disc jockeys, as set forth above, violates Mass. Gen. L. c. 149 § 152A. This claim is brought pursuant to Mass. Gen. L. c. 149 § 150.

## COUNT IV
### WAGE LAW

Defendants' failure to pay the Plaintiffs and similarly situated employees all wages due to them, including making improper deductions from their pay and requiring them to pay shift fees to work and otherwise to pay Defendants' ordinary costs of doing business, violates Mass. Gen. Laws c. 149 § 148.This claim is asserted pursuant to Mass. Gen. L. c. 149 § 150.

## COUNT V
### QUANTUM MERUIT / UNJUST ENRICHMENT

As set forth above, Defendants have been unjustly enriched at the expense of their dancers, bartenders and disc jockeys through the receipt of the benefit of their services without

furnishing just compensation. Plaintiffs are thus entitled to recover for the fair value of their services under the common law doctrine of quantum meruit.

## COUNT VI
## RETALIATION

Defendants' threat to terminate their dancers, bartenders and disc jockeys unless they release their rights under the wage and hour provisions of Chapter 149, and their termination of Plaintiff Patricia Carbone for asserting her rights and refusing to sign such a release, constitutes retaliation in violation of Mass. Gen. Laws c. 149, § 148A.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

1. Certification of this case as a class action pursuant to Mass. Gen. L. c. 149, § 150, and / or Rule 23 of the Massachusetts Rules of Civil Procedure;

2. A declaratory judgment that the plaintiff exotic dancers and other similarly situated persons are employees, not independent contractors;

3. A declaratory judgment that the plaintiff disc jockeys and other similarly situated persons are employees, not independent contractors;

4. A declaratory judgment that the releases signed by the plaintiff exotic dancers, bartenders and disc jockeys are unlawful and invalid;

5. A declaratory judgment that the Defendants may not require exotic dancers and bartenders to pay a per shift fee for working in Defendants' enterprise;

6. An award of damages for all wages and tips to which Plaintiffs are entitled due to Defendants' violation as described here, with all interest accumulated thereon;

7. An award of damages for the plaintiff exotic dancers' and bartenders' per shift fees they have been required to pay;

8. An award of damages for all other benefits of employment due to the plaintiff exotic dancers and disc jockeys because of their misclassification;

9. Statutory trebling of all wage-related damages;

10. Attorneys' fees and costs;

11. A declaration that the purported releases that Defendants required putative class members to sign following the filing of this Complaint are unlawful and invalid;

12. Reinstatement for Plaintiff Patricia Carbone, with restitution of all back pay, front pay, and lost benefits;

13. Any other relief to which the plaintiffs and similarly situated employees may be entitled.

Respectfully submitted,

PAULA RAPOSA, ROBERT BRUSO, MAUREEN RUSHBY,
JESSICA TAYLOR, PATRICIA CARBONE,
LESLIE CAMPBELL, AIMEE MATHEWS,
AMANDA SHUMWAY, and JESSICA ELLEN WRIGHT,
on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan

Shannon Liss-Riordan, BBO # 640716
Stephen Churchill, BBO # 564158
Brant Casavant, BBO # 672614
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street – 20th Floor
Boston, MA 02114
(617) 994 – 5800

Tod A. Cochran, BBO # 643165
Warren H. Pyle, BBO # 408400
18 Tremont Street, Suite 500
PYLE ROME EHRENBERG, P.C.
Boston, MA 02108
(617) 367 – 7200

DATED:   December 13, 2011

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served on counsel for the defendants, Barry J. Miller, Esq., Seyfarth Shaw LLP, Two Seaport Lane, Suite 300, Boston, MA 02210-2028, via hand delivery on December 13, 2011.

Brant Casavant